Lorenzo R. Cunningham
D,98935 (Unit: D4A/A-122)
California Health Care Facility (HCF)
7707 S. Austin Road
P.O. Box 32050
Stockton, California 95213
IN PRO SE:



FILED
OCT 30 2014
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT
(NORTHERN) DISTRICT OF CALIFORNIA

LORENZO R. CUNNINGHAM,

        Plaintiff

    -v-

MEDTRONIC INC., et al.,
NCSF SPINE CENTER., et al.,
DR. SHANE BURCH, M.D.,

        Defendants

(PR) CV 14 4814 EMC

FEDERAL COMPLAINT LAWSUIT
W/ STATE SUPPLEMENTAL CLAIMS

*42 USC 1983 (Federal Lawsuit)

*28 USC 1367 (State Supplemental Claims)

T H E

C O M P L A I N T

## Table of Contents

(I)   Jurisdiction......................................................1

(II)  Parties..........................................................2

(III) Statement of Facts...............................................3

(IV)  The Claims.......................................................9

      Claim#1 (Medical Malpractice)....................................9

              (*) Deliberate Indifference

              (*) Negligence

      Claim#2 (Product Liability).....................................13

              (*) Defective & Deficient Product

              (*) Strict Liability

              (*) Negligence

(V)   Relief & Remedy.................................................19

      (*) Injunctive Relief

      (*) Monetary Relief

      (*) Attorney Fees, Court Cost & Miscellaneous Fees

///

///

///

## Table of Authorities

(*) CASE LAWS:

Estelle v. Gamble (1976) 429 US 97                                    1,12

West v. Atkins (1988) 487 US 42                                         12


Ashker v. Calif. Dept. Corr. (9th Cir,1997) 112 F3d 392                12

Johnson v. Melzer (9th Cir,1988) 134 F3d 1393                          12


Brown v. Bleiberg (Cal,1982) 32 Cal 3d 426                              1

Cabral v. Ralphs Grocery Co. (Cal,2011) 51 Cal 4th 764                 18

Jimenez v. Sears, Roebuck & Co. (Cal,1971) 4 Cal 3d 379             1,18

O'Neal v.Crance Co. (Cal,2012) 53 Cal 4th 335                         18

Pike v. Frank G.Hough Co. (Cal,1970) 2 Cal 3d 465                     18

Rergelsperger v. Siller (Cal,2007) 40 Cal 4th 574                     12

Woods v. Young (Cal,1991) 53 Cal 3d 315                               12


Bettencourt v. Hennessy Ind. (2012) 205 Cal App 4th 1103           1,18

Bucquet v. Livingston (1976) 57 Cal App 3d 914                        12

Edwards v. Superior Court (2001) 93 Cal App 4th 172                   12

Powell v. Standard Brand Paint Co. (1985) 166 Cal App 3d 357         18

Taylor v. Elliot Turbo. Co. Inc. (2009) 171 Cal App 4th 564          18

Tellez-Cordova v. Campbell, et al., (2004) 129 Cal App 4th 577       18

///

///

///

TABLE OF AUTHORITIES

(*) STATUTORY LAWS:

28 USC 1367                                           1,12

42 USC 1983                                           1,12

Calif. Civil Code 1714                                1,18

Calif. Civil Code 3333.2                                19

Calif. Code Civil Procedure 340.5                     1,12

(*) CONSTITUTIONAL LAWS:

U.S. Constitution, Amendment 8                         1,12

Calif.Constitution, Article 1, Section 17           1,12,18

///

///

///

///

(I) JURISDICTION:

(a) Medical Malpractice:

Plaintiff is filing suit under federal law authority on Medical Malpractice via Deliberate Indifference and state law authority on Medical Malpractice via Negligence:

*U.S. Const., Amendment 8
*Calif. Const., Art 1, Sec 17
*42 USC 1983
*28 USC 1367
*Code Civ. Proc. 340.5
*Estelle v. Gamble (1976) 429 US 97, 105-106
*Brown v. Bleiberg (Cal,1982) 32 Cal 3d 426, 437

///
///
///

(b) Product Liability:

Plaintiff is filing suit under state law authority on Product Liability via Negligence, Strict Liability, Failure to Warn:

*Calif. Const., Art 1, Sec 17
*Civil Code 1714
*Jimenez v. Sears, Roebuck & Co. (Cal,1971) 4 Cal 3d 379, 383
*Bettencourt, et al., v. Hennessy Ind. Inc. (2012) 205 Cal App 4th 1103, 1112-1125
*28 USC 1331-1332
*Asker v. Calif. Dept. Correc.(9th Cir,1997) 112 F3d 392, 393

///
///
///(*) NOTE: The Federal Court Maintains
        Jurisdiction of the Lawsuit per
///    *28 USC 1331-1332, 1343 and 1367
        *42 USC 1983...

-1-

(II) PARTIES:

(a) Plaintiff:

Lorenzo Renell Cunningham
D#98935 (Unit: D4A/#A-122)
California Health Care Facility (CHCF)
7707 S. Austin Road
POB 32050
Stockton, California
95213/95215

/////
/////
/////

(b) Defendants:

Medtronics Inc.,
710 Medtronic Parkway
Minneapolie, Minnesota
55432

Dr. Shane Burch, M.D.,
U.C.S.F. Spine Center
400 Parmassus Avenue, #3rd Floor
San Francisco, California 94143

-2-

(III) STATEMENT OF FACTS:

(*) CUSTODY & COMMITMENT: (1995-1996)...

(1) Plaintiff received a legal name change from (CUNNINGHAM) to the name
    (ASKIA ASHANTI) in September 1994 in Los Angeles County Superior Court.
    In 1995, plaintiff suffered a 3-strike/25-year to life judgement in case,
    People v. Ashanti, #BA-118005 (LA.Co.Sup.Ct.1995) for the offense of
    Vehicle Code 10851 (Driving Without Owner Consent/Joyriding). The (CDCR)
    California Department of Corrections & Rehabilitation has plaintiff com-
    mitted under (CUNNINGHAM) name with the (ASHANTI) name listed as (i.e. an
    a/k/a: also known as). During plaintiffs $17\frac{1}{2}$ year imprisonment, he has
    earned an Electrical Diploma; Carpentry Diploma (In Progress); Associate
    Degree; Bachelor Degree and Juris Doctor Law Degree via external educa-
    tional correspondence diploma/degree programs (1995-2013).

(2) Plaintiff currently is litigating a Petition for Writ of Habeas Corpus
    (28 USC 2244 & 2254) requesting a new trial or reduction of sentence due
    to Prosecutors suppression of discovery evidence withheld from the Defense
    such as (i.e. Los Angeles Police & California Highway Patrol Investigation
    Follow-Up Reports; and criminal convictions of victim and witness) in case.

(*) WORKERS COMPENSATION: (1994-1995)...

(3) In December 1994, plaintiff suffered a back injury while employed for
    Unique Plastering-Stucco Construction Company. Plaintiff was placed on
    Workers Compensation from December 1994 to November 1995 and the Law
    Offices of Moga & Hurley settled case for $20,000.

(*) PRISON MEDICAL TREATMENT: (1996-2001)...

(4) Plaintiff while imprisoned from 1995-2001 for approximately 6-years re-
    ceived pain medications only for back injury (i.e. Ibuprofin and Motrin)
    and was later referred to the Community Hospital via an Orthopedic doctor
    for further medical treatment in 2001.

(*) QUEEN OF THE VALLEY (1ST NECK & BACK SURGERY): (2001)...

(5) In March 2001, Dr. Morgese/Orthopedic Surgeon diagnosed plaintiff with
cervical spondylosis, focal stenosis, cervical myelopath and performed
an anterier cervical diskectomy at cervical disc levels (C4, C5, C6, C7)
and attached 3-inch titanium plate/rod hardware to area in neck.

(6) In June 2001, Dr. Morgese/Orthopedic Surgeon performed a multilevel
lumbar decompression back fusion surgery at (L3, L4, L5, S1). A Bone
Growth Stimulator was placed inside body along with an attached 6-inch
titanium plate/rod hardware to area in back.

(7) Between 2005-2007, plaintiff began to experience excruciating back
pain resulting in pain radiating down the legs and the pressure at
the surgical site exerting a stabbing/throbbing sharp pain. Plaintiff
was unable to walk beyond 50-yards and was assigned a wheelchair at
(CMF) California Medical Facility prison at Vacaville. The prison
x-rays revealed defect or breakdown with hardware embedded in back.

(*) QUEEN OF THE VALLEY (2ND BACK SURGERY): (2007)...

(8) In February 2007 and June 2007, plaintiff was referred to outside con-
sultations with Dr. Huffman/Orthopedic Surgeon. Dr. Huffman ordered
x-rays (radiological and CT-Scan) and the diagnosis showed a non-union
at (L5-S1) segment with poor posterolateral fusion mass. A further
back surgery was ordered with recommendation that the back be re-fused
at non-union section, re-instrumentation of the 2001 back hardware with
2007 back hardware and the possible use of (OP-1 Putty) to be used in
surgery as a bone morphogenic protein to aid fusion of the back.

(9) In October 2007, Dr. Huffman/Orthopedic Surgeon performed an explora-
tion of (L3,L4,L5,S1), hardware removal of (L3,L4,L5,S1), revision fu-
sion of (L5-S1) and the reinstrumentation of hardware at (L3,L4,L5,S1)
along with (OP-1 Putty) placement of protein in back for fusion. The
plaintiff remained at hospital for 5-days and returned to prison custody.

-4-

(10) In February 2008, plaintiff returned for a follow-up visit with the defendant Dr. Huffman and complained of leg swelling and chronic back pain at surgical site. Dr. Huffman recommended physical therapy and daily walking as treatment.

(11) In May 2008, plaintiff returned for a 2nd follow-up visit with Dr. Huffman and reported leg swelling was under control, and complained of new lumbrosacral site back pain and the tightness of hardware in back from the surgery. Dr. Huffman recommended that plaintiff wait at least 1-year before removal of hardware from back until the fusion healed in the back or formed in the back from the revision surgery.

(12) In August 2008, plaintiff returned for a 3rd follow-up visit with Dr. Huffman and complained of increased significant back pain at surgical site and tightness of hardware or prominence and requested for hardware removal. Dr. Huffman ordered CT-Scan x-rays on the back.

(13) In November 2008, plaintiff received a CT-Scan x-ray at (CMF) California Medical Facility prison in Vacaville showing degenrative changes in lumbar spine, central canal stenosis and neural foraminal narrowing at (L4-L5).

(14) In December 2008, plaintiff received a CT-Scan x-ray at (QVMC) Queen of the Valley Medical Center in Napa showing possible fusion at (L3-S1) but with limited viewing due to beam hardening artifact of hardware, disc protrusion, central canal narrowing and stenosis.

(15) In February 2009, plaintiff returned for a 4th follow-up visit with Dr. Huffman and complained of continual back pain at surgical site and the prominence of pain with hardware in back. Plaintiff terminated the doctor/patient relationship with Dr. Huffman who in turn recommended that plaintiff receive further back treatment at UC Davis University or the UCSF Spine Center in San Francisco.

-5-

(*) UCSF SPINE CENTER AT SAN FRANCICO UNIVERSITY: (2009-2012)...

(16) In April2009, plaintiff case was transferred from Queen of the Valley
Medical Center in Napa to UCSF Spine Center in San Francisco for back
treatment. Plaintiff received his 1st consultation with (DR. SHANE BURCH)
who conducted an interview and review of 2001 and 2007 back surgery
records. Dr. Burch diagnosed plaintiff with lumbosacral spondylosis
and central stenosis and recommended (3) trigger point injections and
a follow-up visit.

(17) In November 2009, plaintiff received his 1st follow-up visit with
the same diagnosis of spondylosis and stenosis. A right ilium lesion
was measured suggesting benign etiology. A CT-Scan x-ray was ordered
along with a follow-up visit.

(18) In April 2010, plaintiff received his 2nd follow-up visit with
the same diagnosis of spondylosis and stenosis. Dr. Burch diagnosis
further revealed a halo image around the screws of hardware and non-
fusion of (L4,L5) and a recommendation of surgical management for
fusion of (L3-L4) and (L5-S1). A follow-up for pre-op surgery ordered.

(19) In June 2010, plaintiff received his 3rd follow-up visit with the
diagnosis being the same as previous visits. Dr. Burch during pre-op
consultation recommended fusion of (L3-L4), (L5-S1), removal of disc
between (L3-L5), widen of canal to prevent further stenosis at (L2-L3)
on narrowing of disc, removal of Bone Growth Stimulator (2001-unit)
from the body. Further discussions and recommendations is suggested
to correct any defects or deficiencies in the B007 hardware/instrumen-
tation placed in the body during 2007 2nd back surgery.

///

///

-6-

(20) In August 2011, plaintiff received a final Consultation Visit with
UCSF Spine Center along with a series of 2011 visitations for the
follow up to discuss treatment options after initially being approved
by (CMF) California Medical Facility for the back surgery but then
rejected by the Office of the Federal Receiver (i.e. PLATA CLASSACTION).
Eventually, the Federal Receiver Office at the (CDCR) California De-
partment of Corrections & Rehabilitation headquarters approved for
the surgery to proceed.

(21) In October 2011, plaintiff received a Pre-Operation visit with the
Dr. Shane Burch (Spine Surgeon) at UCSF Spine Center to address the
surgical procedures of correcting medical diagnosis of (i.e. Lumbar
Spondylosis; Flatback Syndrome & Psudarthrosis) by fusing sections
(i.e. Spine: T-10 thru S-1) thoracic, lumbar and sacral sections of
the spine; and to re-fuse all non-fused sections from the previous
surgery conducted by Queen of the Valley Hospital at Napa County
in October 2007.

(22) In April 2012, Dr. Shane Burch performed plaintiff's back surgery
operation via fusing the spine along sections (T-10 thru S-1) and
installing new Harrington Rod instrumentation.

(23) In late August 2012, plaintiff while in his prison housing unit was
attempting to put on his sock on the right foot, the right side
Harrington-Rod (hardware) broke/snap in half inside plaintiff back.
Plaintiff was transported to UCSF Spine Center and fitted with a
pre-surgery back brace in preparation the next day after breaking
of the (hardware) for a future surgery.

(24) On September 4, 2012, at approximately midnight while plaintiff perform-
ed the logroll getting out of bed to use the restroom in his prison
housing unit, the left side Harrington-Rod (hardware) broke/snap in
half inside plaintiff body.

-7-

(25) On the same day of September 4, 2012, the (CMF) California Medical Facility conducted an x-ray and confirmed that both Harrington Rods (hardware) were now broken; prison physician Dr. Sherod, M.D. initiated arrangements for plaintiff to be transported to UCSF Spine Center to commence back surgery immediately for the repair of the broken (hardware) in plaintiffs back.

(26) On September 4, 2012, plaintiff was transported and admitted into UCSF Spine Center and remained housed/hospitalized for 21-days (3-weeks) from (9/4/2012 thru 9/24/2012). Plaintiff back surgery was performed by Dr. Shane Burch, M.D. and other physicians where on (9/20/2012) plaintiffs broken Harrington Rods (hardware) was removed from the body; and reinstrumented with a new set of (hardware). Plaintiff was discharged from UCSF Spine Center on (9/24/2012).

(27) Plaintiff suffers from excruciating back pain after the April 2012 UCSF Spine Center (1st back surgery); after the breaking/snapping of the Harrington Rods (hardware) in August & September 2012; and after the September 2012 UCSF Spine Center (2nd back surgery). The Plaintiff have been instrumented and re-instrumented with the Harring- ton Rods (hardware) from (Spine Area: T-10 thru S-1) which covers the (i.e. thoracic, lumbar & sacral) sections of the back and the Plaintiffs seeks the removal of the (hardware) which causes excrucia- ting pain on the back.

///

///

///

-8-

## (IV) THE CLAIMS:

## CLAIM#1: (MEDICAL MALPRACTICE)...

Plaintiff contends that defendant (DR. SHANE BURCH & JOHN DOES 1-10) committed medical malpractice by instrumenting plaintiff with Harrington Rods (hardware) extending from (Spine Area: T-10 thru S-1) resulting in a 2-day operation on (4/11/2012) and (4/12/2012) without permission of the plaintiff at the UCSF Spine Center.

Plaintiff discussed and agreed that the defendants would fuse any areas of the spine either un-fused naturally from (T-10 thru S-1); and/or unfused from prior back surgeries in 2001 and 2007 from Queen of the Valley hospital. Plaintiff agreed/consented to be reinstrumented from (L1-Thru-S1) as was done in previous back surgeries.

In April 2012, defendants at UCSF Spine Center performed the back surgery on (4/11/2012) which was suppose to be a 1-day operation (est: 3-6 hours); but while unconscious without gaining consciousness, plaintiff was taken back into the operation room on (4/12/2012) where the defendants performed a 2nd day operation instrumenting & fusing the back from (T-10 thru S-1). During several follow-up visits with defendants, plaintiff complained about the excruciating pain being suffered from the Harrington Rods (hardware) extended beyond the lumbar section into the thoracic section of (T-10/T-11/T-12). Plaintiff requested from Harrington Rods (hardware) to be removed from the body due to pain.

In August & September 2012, both left & right side Harrington Rods (hardware) broke while plaintiff was putting on a sock and on another occasion rolling out of bed to use the restroom. Plaintiff requested for defendants to not reinstrument the spine in sections thoracic (T-10 thru T-12) and against the consent/permission of plaintiff the defendants claimed they must reinstrument the Harrington Rods (hardware) again from (T-10 thru S-1) during

the September 2012 (i.e. Revision Back Surgery). During the subsequent follow-up visits in November and December 2012 with defendant, plaintiff again requested at some future date is he able to have the Harrington Rods (hardware) removed from his back due to the excruciating pain being experienced especially when plaintiff sleeps with plaintiff being forced to sleep on either left or right side of the body and not being able to sleep on his back or stomach due to the (hardware) placing pressure on the body causing pain and the request by the defendant was denied.

The defendant acknowledged to correct the (i.e. Flatback Syndrome) that he believed plaintiff suffered, he must cut a special (i.e. triangle-shape) bone and shape the Harrington Rods (hardware) around that bone to create a bend-shape in plaintiffs back for both the April 2012 and revision/correction September 2012 back surgeries. Plaintiff pointedout to defendant that the bot left & right side Harrington Rods (hardware) broke exactly at the bend-areas that defendants placed in the (hardware) around the triangle-shape bone that defendants carved out in the back.

During the defendants revision September 2012 back surgery, the defendant installed a 3rd-rod in the middle to support the left & right sides of the Harrington Rods since the defendant failed to install the 3rd support rod in the initial April 2012 back surgery.

Defendant acknowledged during September 2012 revision/correction back surgery of a rod breaking in a back surgery patient and offered no response why defendant failed to warn plaintiff that the rods (hardware) can break nor why a 3rd-support rod was not placed inside during the April 2012 back surgery.

Defendant is being sued in their individual capacity and their official capacity for Medical Malpractice via Deliberate Indifference and Negligence for the April 2012 and September 2012 back surgeries.

Subclaim#1 (Issue: Instrumentation of Hardware from T-10 to S-1)...

Plaintiff prior 2001 and 2007 back surgeries resulted in instrumentation from (L1 to S1) and defendant informed plaintiff he has flatback syndrome in 2011-2012 unheard before in previous back analysis & surgeries. Defendant over reservations and objections of plaintiff instrumented back from (T10 to (S1) in April 2012 causing severe back pain and breathing difficulty.

Subclaim#2 (Issue: Re-Instrumentation of Hardware from T-10 to S-1)...

Plaintiffs rods (hardware) 1st rod broke in late Aug/2012 and 2nd rod did break in 9/4/2012 resulting in 21-day/3-week stay in hospital for removal of rods and corrective surgery. Over plaintiffs objections with plaintiff demanding instrumentation to (L1 to S1) per 2001 & 2007 to avoid severe back pain from the rods instrumentation of (T10 to S1); the defendant over plaintiff consent for (L1 to S1) reinstrumented back from (T10 to S1) over plaintiffs objections with the rods causing excruciating & severe back pain from the date of September 2012 until this month July 2014. Plaintiff has been placed on medications oxycotin, morphine, methadone, codeine/tyllenol#3, bacafin. (fn.1)

Subclaim#3 (Issue: Failure to Warn that Rods/Hardware can Break-Fracture)..

The defendant in theinitial April 2012 back surgery never warned plaintiff that the rods can fracture or break resulting in corrective surgery and only stated any redo/corrective surgery would be due to back failure via pain. Defandant insured plaintiff that rods (hardware) composed of titanium steel and celium chrome was to remain in back for lifetime. Defendant during September 2012 corrective surgery acknowledged that on another occasion a patients rod broke without detailing incident how rod broke in a different person. Plaintiff would8ve declined surgery if he had knowledge of (rods) possibly breaking.

Subclaim#4 (Issue: Failure to Install 3rd and/or 4th Support Rod in Back)...

The defendant did not install a 3rd or 4th Support Rods in April 2012 back surgery. Once both rods (hardware) broke in August 2012 and September 2012, defendant installed a 3rd-Support Rod on left-rod in September 2012 and no 4th-Support Rod on right-rod in September 2012. Defendant in September 2012 acknowledged at surgery that he knew of a previous person rod that broke in back; defendant committed malpractice by failing to place 3rd & 4th Support-Rods to the left & right rods at April 2012 back surgery; and failed to install 4th Support-Rod to right-rod to prevent possible fracture/break in future.

fn.1: Plaintiff assigned daily use of
Walker & Wheelchair and is housed in
(OHU) Outpatient Housing Unit at the              -11-
(CHCF) Calif. Health Care Facility...

Subclaim#5 (Issue: Failure to Hospitalize Patient on 1st broken Rod In back)...

Defendant performed patients 1st back surgery in April 2012 and never informed plaintiff of the possibility of rods breaking/fracturing in back. Defendant & Medical Staff (Nurses, Physical Therapist, Occupational Therapist) demonstrated the log-roll procedure after surgery on how to enter and exit, the bed and how to dress/undress and to perform cleaning hygeine of body. On 8/22/2012, plaintiffs left (rod) fractured/broke while sitting on side of bed to put on sock. Plaintiff was immediately transported to hospital and was fitted with a pre-surgery torso back brace and returned to prison for a later return to hospital to perform surgery. The defendant failed to house plaintiff-patient at the UCSF Spine Center hospital under direct medical doctor/nurse supervision in preparation of back surgery. The return to prison placed plaintiff health and safety at risk and defendant never warned plaintiff of any posibility of the 2nd(rod) breaking.

After patient was returned to prison, on 9/4/2012 while performing the log-roll to exit bed to use the restroom, the 2nd right (rod) fractured/broken and patient was transpotted by ambulance immediately to UCSF hospital and was housed for 3-weeks/21-days from (9/4/2012 -to- 9/24/2012) suffering severe and excruciating back pain and internal organ pain due to fractured/broken (rods).

## CONCLUSION

Defendant committed Medical Malpractice: (i) Deliberate Indifference, and (ii) Negligence on (Subclaim#1 -thru- Subclaim#5). A claim of medical malpractice exist meaning a negligent act or omission to act by health care provider rendering profession services which act/omission is proximate cause of personal injury. A deliberate indifference claim exist via mind culpability when a defendant knew of substantial risk of serious harm and risk was disregarded by failing to take reasonable measure to prevent it. Preponderence is standard used for negligence, deliberate indifference, causation and damages.

(*) LAWS:

*U.S. Const., Amendment 8 & Calif. Const., Art 1, Sec 17
*28 USC 1367, 42 USC 1983, & Code Civil Proc. 340.5
*Estelle v. Gamble (1976) 429 US 97, 105-106
*West v. Atkins (1988) 487 US 42, 50, 54-57
*Asker v. C.D.C., (9th Cir,1997) 112 F3d 392, 393
*Johnson v. Meltzer (9th Cir,1988) 134 F3d 1393, 1398
*Woods v. Young (Cal,1991) 53 Cal 3d 315, 320
*Hergelsperger v. Siller (Cal,2007) 40 Cal 4th 574, 577
*Edwards v. Superior Court (2001) 93 Cal App 4th 172, 179
*Bucquet v. Livingston (1976) 57 Cal App 3d 914, 921

CLAIM#2 (PRODUCT LIABILITY)...

Defendant (MEDTRONIC INC.) Harrington-Rods (Rods) product was used by Dr. Burch at UCSF Spine Center to instrument plaintiffs back from (T10 - S1) in April 2012, (EX#F, EX#G, EX#H).

Defendant (MEDTRONIC INC.) Harrington-Rods (Rods) product was used by Dr. Burch at UCSF Spine Center to re-instrument plaintiffs back from (T10 - S1) in September 2012 revision/corrective surgery, (EX#I, EX#J, EX#K).

Plaintiff after the performance of the initial back surgery in April 2012; after being returned to prison facility, on 8/22/2012 while putting on a sock the left (rod) fractured/broke. Plaintiff was returned to UCSF Spine Center and fitted for a pre-surgery torso back brace in preparation for corrective surgery, on 9/4/2012 the right (rod) fractured/broke where plaintiff was returned again to UCSF Spine Center and rehoused for 3-weeks/21-days to have a corrective/revision back surgery performed in September 2012 to remove the broken (2) left & right (rods) for reinstrumentation, (EX#K).

Plaintiff contends the defendants (MEDTRONIC INC) back surgical (rods) was (i) defective and deficient; (ii) negligence; (iii) strict liability via the claim of Product Liability. The Suit is via Individual/Official Capacities. Subclaim#1 (Issue: Product was Defective & Deficient)...

The Back Surgeon (Dr. Shane Burch, MD) informed plaintiff that the defendant (Medtronics) back-surgical (rods) are composed of titanium-steel and of celium-chrome and as top grade steel or metal the (rods) will last a lifetime in patients body and will not be removed from body. The defendant (MEDTRONIC INC.) designed, or manufactured, or distributed the defective & deficient Harrington Rods or (rods) which are (2) parallel metalic back surgical devices sold to (i.e. Dr. Shane Burch, MD Surgeon/UCSF Spine Center) in San Francisco for plaintiffs back surgeries in April 2012 and when the (Rods) broke for the corrective September 2012 surgery.

Defendant (MEDTRONIC) back surgical (rods) per Dr. Burch the Surgeon is composed/comprised of titanium steel and/or celium chrome and is high grade metal or steel that is suppose to last a lifetime inside theback of plaintiff without breaking when the plaintiff performs (2) simple daily acts such as:

-13-

(1) Putting on Socks & Shoes daily, and (2) Performing the log-roll daily to get in bed and to get out of bed several times per day. When the defendants (MEDTRONIC3) rods were placed in the body in April 2012, this defendant experienced daily pain when putting on socks and shoes until the point plaintiff ceased several times per week putting on socks and shoes and simply wore shower shoes. Between April 2012 and August 2012 plaintiff experienced daily and weekly distress breathing where the (rods) felt they were placing pressure on the diaphragm.

After both the surgeries specifically when the April 2012 back surgerywas performed, from April-September 2012 plaintiff experiences daily severe and excruciating pain from the (rods) as he daily get in bed, get out bed, and when in bed turning from side to side while resting or sleeping. After the September 2012 corrective back surgery, plaintiff experiences from September to today July 2014 severe and excruciating pain from the (rods) while getting inand out of bed, while lying in bed resting and sleeping when turning from side to side in bed.

A (3rd-support rod) was placed adjacent to left-rod to prevent future fracture or breaking. A (4th-support rod) was not placed adjacent to right-rod to prevent future fracture or breaking.

Plaintiff contend the defendant (rods) are very lengthly-and-narrow and may contribute to the fracture/breaking of (rods)

Plaintiff contends the defendants (rods) are not accompanied with smaller-support (rods) to be attached adjacent to the regular (rods) which would prevent possibly the fracturing/breaking of (rods) and thus contributing to the (rods) being defective and deficient for back surgeries

The defendant (MEDTRONIC) left (rod) broke on 8/22/2012 and the right (rod) broke on 9/4/2012 and on both occasions the plaintiff/patient suffered severe and excruciating daily pain with the initial fracture/breakage that resulted in an icepick/sharp object stabbing pain; plaintiff/patient then suffered daily severe/excruciating pain with the (rods) moving back & forth inside body causing throbbing pain and causing difficulty breating; and causing muscle spasm resulting in plaintiff being placed on (medication: baclafin/musclè re-relaxer).

For daily pain, plaintiff was placed on oxycotin, morphine, methadone, codein/tylenol#3, ibuprofin/motrin. Patient is given daily use of TENS-electrical unit and was placed in a (OHU) Outpatient Housing Unit at CMF/California Medical Facility in Vacaville & CHCF/Calif. Health Care Facility in Stockton. The plaintiff is adsigned a Walker & Wheelchair for daily mobility use.

Subclaim#2 (Issue: Strict Liability/Failure To Warn on Fracture-Breaking Rods)

The defendant (MEDTRONIC) failed to warn this plaintiff and the Back Surgeon Dr. Shane Burch on the April 2012 and September 2012 back surgeries of installing their product (Rods) from (T10 to 31) can cause or has the risk of harm of fracturing or breaking; and/or there are known or knowable dangers of the (Rods) fracturing or breaking when the patient put on their socks, put on their shoes, and while getting in bed, and while performing a logroll to get out of bed, and or while turning to the left/right in bed resting or sleeping.

Plaintiff contends the defendants defective product on 8/22/2012 left (rod) fractured/broke while putting on a sock sitting on the side of the bed; and the defective product on 9/4/2012 right (rod) fractured/broke while performing the logroll to get out of bed to use the restroom. Plaintiff contends had the defendant (MEDTRONIC) warned the Dr. Shane Burch who performed the back surgery and warned the plaintiff/patient that the (rods) could fracture or break while performing daily normal activities such as putting on socks/shoes and performing logroll to get out of the bed to use the restroom, this plaintiff would not have had the defendants (rods) installed in his back for a lifetime with the knowledge that the(rods) can break. Plaintiff notes that in April 2012 and September 2012 the UCSF Spine Center in San Francisco County performed the back surgeries; and in June 2001 and October 2007 plaintiff had the Queen of the Valley Hospital in Napa County likewise has never warned the patient/plaintiff that surgical (rods) can break inside body after a surgery while performing normal daily activities such as putting on socks/shoes and getting in and out of bed to sleep or use the restroom.

The defendants (MEDTRONICS) fracturing/breaking of the (rods) on 8/22/2012 and 9/4/2012 cuased severe and excruciating back pain withthe initial snapping of (rods) causing stabbing/poking effect; and causing daily pain with muscle spasms and difficulty in breathing until the back surgery was performed on 9/20/2012.to remove the (broken-rods) with the replacement of (new-rods).

In addendum, as a result of defendants (MEDTRONIC) defective rods breaking, plaintiff was placed on medications oxycotin, morphine, methadone, codeinetylenol#3, ibufrofin/motrin and baclafin. Plaintiff has been assigned to a wheelchair & walker for mobility problems; and has been housed in the (CHU) Outpatient Housing Units at the CMF/California Medical Facility and the new CHCF/California Health Care Facilitys in the respective cities of Vacaville and Stockton.

Subclaim#3 (Issue: Strict Liability/Failure to Warn Possible Cancer)

SPECIAL NOTE: PLAINTIFF/PATIENT HAS WRITTEN TO DEFENDANTS (DR. SHANE BURCH)
AND (MEDTRONIC INC.) ON SEVERAL OCCASIONS TO OBTAIN ANYTYPE
OF INFORMATION IF THE DEFENDANTS (i.e. SURGICAL RODS) CAN
CAUSE ("POSSIBLE CANCER") WITH NO RESPONSE FROM ANY PARTY.
PLAINTIFF/PATIENT ONLY INCLUDES THIS BRIEF CLAIM IN THE
EVENT ("DISCOVERY") SHOWS DEFENDANT FAILURE TO WARN ON THE
POSSIBLE EFFECTS OF CANCER ON LONG TERM METALLIC EXPOSURE
FROM THE ("RODS") SO PLAINTIFF DO NOT HAVE TO AMEND THE SUIT
IN THE FUTURE. IF NO CANCER POSSIBILITY EXIST, THE DEFENDANTS
ARE FREE TO MOVE TO STRIKE/DISMISS SUBCLAIM#3 FROM SUIT...

Plaintiff contends that the defendant (MEDTRONIC) defective product the
(Rods) instrumented in the back surgeries during April 2012 and September
2012 may possibly cause cancer and that the defendant failed to warn the Sur-
geon Dr. Shane Burch and this plaintiff/patient of the possibility of the
(rods) being possibly carcinogenic due to long term or life term exposure of
metalic compounds within the (rods). If it is determined that the possibility
of cancer exist from the (rods), this plaintiff/patient suffered injury due
to plaintiff/patient being deprived of the right to refuse the installment
of the (rods) inside of body for back surgery. In addendum via Injunctive Re-
lief, plaintiff/patient will move for the defendants to remove the (rods) from
body firstly due to severe/excruciating pain being suffered daily; and second-
ly especially due to any possibility of cancer due to long term exposure of
the (rods).

/////
/////
/////

Subclaim#4 (Issue: Negligence/Failure to Warn on Fracture-Breaking Rods)

The defendant (MEDTRONIC) failed to warn this plaintiff and the Back Sur-
geon Dr. Shane Burch in the April 2012 and September 2012 back surgeries of
installing their product (Rods) from (T10 to S1) in which defendants had a
duty owed that was breached and that a causal relationship exist between the
breach and injury to plaintiff; and/or the defendant had a duty of care to
foreseeable users of its product; a duty to design product for safe use; a
duty to warn of risks of using product; and a duty to take ordinary care in
the conduct of oenes activities of product manufacturers and suppliers that
defendants product (Rods) could or would fracture or break when patient put
on their socks/shoes, and/or while getting in bed and while performing the
logroll to get out of bed, and orwhile turning to the left/right in bed rest-
ing or sleeping.

-16-

Plaintiff contends the defendants defective product on 8/22/2012 left (rod) fractured/brok while putting on a sock sitting on the side of the bed; and the defective product on 9/4/2012 right (rod) fractured/brok while performing the logroll to get out of bed to use the restroom. Plaintiffcontends had the defendant (MEDTRONIC) warned the Dr. Shane Burch who performed the back surgery and warned the plaintiff/patien that the (rods) could fracture or break while performing daily normal activities such as putting on socks/shoes and performing logroll to get out of the bed to use the restroom, this plaintiff would not have had the defendants (rods) installed in his back for a lifetime with the knowledge that the(rods) can break. Plaintiff notes that in April 2012 and September 2012 the UCSF Spince Center in San Francisco County performed the back surgeries; and in June 2001 and October 2007 plaintiff had the Queen of the Valley Hospital in Napa County likewise has never warned the patient/plaintiff that surgic l (rods) c_n break inside body afteraa surgery while performing normal daily activiities such as putting on socks/shoes and getting in and out of bed to sleep or use the restroom.

The defendants (MEDTRONICS) fracturing/breaking of the (rods) on 8/22/2012 and 9/4/2012 caused severe and excruciating back pain with theinitial snapping of (rods) causing stabbing/poking effect; and causing daily pain with muscle spasms and difficulty in breathing until the back surgery was performed on 9/20/2012 to remove the (broken-rods) with the replacement of (new-rods).

In addendum, as a result of defendants (MEDTRONIC) defective rods breaking, plaintiff was placed on medications oxycotin, morphine, methadone, codeine-tylenol#3, ibuprofin/motrin and baclafin. Plaintiff has been assigned to a Wheelchair & Walker for mobility problems; and has been housed in the (OHU) Outpatient Ho sing Units at the CMF/California Medical Facility and the new CHCF/California Health Care Facilitys in the respective cities of Vacaville and Stockton.

/////
/////

Subclaim#5 (Issue: Negligence/Failure to Warn Possible Cancer)

SPECIAL NOTE: PLAINTIFF/PATIENT HAS WRITTEN TO DEFENDANT (DR. SHANE BURCH) AND (MEDTRONIC INC.) ON SEVERAL OCCASIONS TO OBTAIN ANYTYPE OF INFORMATION IF THE DEFENDANTS (i.e. SURGICAL RODS) CAN CAUSE ("POSSIBLE CANCER") WITH NO RESPONSE FROM ANY PARTY. PLAINTIFF/PATIENT ONLY INCLUDED THIS BRIEF CLAIM IN THE EVENT ("DISCOVERY") SHOWS DEFENDANT FAILURE TO WARN ON THE POSSIBLE EFFECTS OF CANCERON LONG TERM METALLIC EXPOSURE FROM THE ("RODS") SO PLAINTIFF DO NOT HAVE TO AEEND THE SUIT IN THE FUTURE. IF NO CANCER POSSIPILITY EXIST, THE DEFENDANTS ARE FREE TO MOVE TO STRIKE/DISMISS SUBCLAIM#5 FROM SUIT...

-17-

Plaintiff contends that the defendant (MEDTRONIC) defective product the (Rods) instrumented in the back surgeries during April 2012 and September 2012 may possibly cause cancer and that the defendant failed to warn the Surgeon Dr. Shane Burch and this plaintiff/patient of the possibility of the (rods) being possibly carcinogenic due to long term or life term exposure of metalic compounds within the (rods). If it is determined that the possibility of cancer exist from the (rods), this plaintiff/patient suffered injury due to plaintiff/patient being deprived of the right to refuse the installment of the (rods) inside of body for back surgery. In addendum via Injunctive Relief, plaintiff/patient wil move for the defendants to remove the (rods) from body firstly due to severe/excruciating pain being suffered daily; and secondly especially due to any possibility of cancer due to long term exposure of the (rods).

## CONCLUSION

Defendant committed Product Liability: (i) Defective & Deficient Product; (ii) Strict Liability and (iii) Negligence via the manufacturer, design, or distribution of tthe product; and/or failure to warn of the risk or knowable dangers of product; and/or failure to warn on duty to care on dangers orrisk of use of product; and/or failureto warn of the possibility of cancer via the possibility of risk/danger to exposure of cancer.

(*) LAWS:
*Calif. Const., Art 1, Sec 17
*Civil Code 1714
*O'Neil v. Crance Co (Cal,2012) 53 Cal[4th]535, 342-348, 351-352, 360-362
*Pike v. Frank G. Hough Co. (Cal,1970) 2 Cal 3d 465, 470
*Cabral v. Ralphs Grocery Co. 51 Cal 4th 764, 774 (Cal,2011)
*Jimenez v. Sears Reebuck & Co. (Cal,1971) 4 Cal 3d 379, 387
*Taylor v. Elliot Turbmachinery Co. Inc. (2009) 171 Cal App 4th 564, 575-578
*Tellez-Cordova v. Campbell Hausfeld/Scott (2004) 129 Cal App 4th 577, 579-586
*Powell v. Standard Brand Paint Co. (1985) 166 Cal App 3d 357, 362
*Bettencourt v. Hennessy Ind. (2012) 205 Cal App 4th 1103, 1117-1120

////////////////

*28 USC 1331-1332
*42 USC 1983
*Ashker v. C.D.C, (9th Cir,1997) 112 F3d 392, 393

-18-

## (V) RELIEF & REMEDY:

### (1) Injunctive Relief:

Plaintiff move to have the defendants to remove the (Rods) installed in back instrumedted at (T10 to S1) by either removing all hardware, and/or by reducing instrumentation to 50% due to daily severe and excruciating pain being experienced, and/or due to the possibility to the exposure of cancer for long-term/life-term installment.

### (2) Monetary Relief:

Plaintiff move the defendant (Dr. Shane Burch & UCSF Spine Center) per Civil Code 3333.2 via (MICRA) Medical Injury Compensation Reform Act sue to pay sum of $250,000 (Two-Hundred & Fifty Thousand Dollars) and in addition to nominal/compensatory/punitive damages sue for $1,000,000 (One Million Dollars) for mental/physical/emotional injury. The defendant (Medtronic Inc.) is being sued for mental/physical/emotion injury with nominal/compensatory/punitive damages for $1,000,000 (One Million Dollars).

### (3) Attorney Fees & Court Cost & Miscellaneous Fees:

Plaintiff move the Court for Attorney Fees, Court Cost and Miscellaneous Fees as it deems fit in accordance with law.

I DECLARE UNDER PENALTY OF PERJURY AND THE LAWS OF CALIFORNIA THE FOREGOING IS TRUE. THIS ACTION WAS EXECUTED ON **/0** /**20** /**2014** AT STOCKTON, CALIFORNIA.

LORENZO R. CUNNINGHAM

-19-

S   E   R   V   I   C   E

CUNNINGHAM

    V.

MEDTRONICS INC, ET AL.,

#_____

PROOF OF SERVICE

I declare that I am over the age of (18) and am a party to this cause of action. I declare that I serviced the below parties by depositing copy of the (COMPLAINT) in the US MAIL system at the California Health Care Facility in Stockton, California.

Clerk of the Court
Federal District Court (Northern)
450 Golden Gate Avenue
San Francisco, CA 94102

Office of Attorney General
State of California
1300 I Street
Sacramento, CA 94244

Medtronic Inc.,
Office of Staff Counsel
710 Medtronic Parkway
Minneapolis, Minnesota 55432

Shane Burch, MD.,
UCSF Spine Center
400 Parnassus Avenue, 3rd Floor
San Francisco, California 94143

I DECLARE UNDER PENALTY OF PERJURY AND THE LAWS OF THE (USA) THE FOREGOING IS TRUE. THIS SERVICE WAS EXECUTED ON  _10_/_20_/_2014_ AT STOCKTON, CALIFORNIA.

LORENZO R. CUNNINGHAM (Plaintiff)